IRVING, P.J.,
for the Court:
¶ 1. Gary C. Marter and Celeste G. Mar-ter were married on June 1, 1978, in Grenada County, Mississippi. The Marters separated on March 8, 2008. Celeste filed for divorce on April 7, 2008, alleging habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. Gary filed a countercomplaint for divorce, alleging habitual cruel and inhuman treatment, adultery, habitual and excessive drug use, desertion, or, in the alternative, irreconcilable differences. Celeste then filed a motion to amend her complaint to include adultery as a ground for divorce. Ultimately, Gary and Celeste consented to a divorce on the ground of irreconcilable differences and asked the chancery court to decide the issues of property division, alimony, and attorneys’ fees.
¶ 2. The chancery court granted the couple a divorce on the ground of irreconcilable differences and divided the marital property. The court found that Celeste was not entitled to alimony and that neither party was entitled to attorneys’ fees. Celeste and Gary each filed motions to reconsider. Following the chancery court’s order regarding the motions, Gary filed a notice of appeal. Subsequently, Celeste filed a “Motion to Correct Judgment,” asking the court to address certain issues that it had omitted from its order on the motions to reconsider. In response, the chancery court amended its order on *736 the motions to reconsider. Gary filed a motion to set aside the amended order, which the chancery court denied. Gary filed a second notice of appeal, and later a motion to consolidate his two appeals, which the Mississippi Supreme Court granted.
¶ 3. On appeal, Gary raises the following issues: (1) whether the chancery court erred in its classification of certain property as marital, (2) whether the chancery court erred in its valuation of certain property, and (3) whether the chancery court failed to comply with Rule 60 of the Mississippi Rules of Civil Procedure in amending its order regarding the motions to reconsider.
¶ 4. Because the chancery court’s valuation of certain property was not supported by substantial evidence, we reverse the chancery court’s judgment and remand this case for additional proceedings consistent with this opinion. Additionally, the chancery court lacked jurisdiction to consider Celeste’s motion to correct the judgment. As such, we vacate the chancery court’s amended order on the motions to reconsider. As to the remaining issue, we affirm.
FACTS
¶ 5. Gary and Celeste owned 120 acres of land in Grenada, Mississippi. Celeste had inherited an undivided one-half interest in the 120 acres from her grandfather sometime between the late 1980s and early 1990s. Celeste’s sister held the remaining one-half interest. During the marriage, the Marters purchased the sister’s one-half interest using marital funds. Gary testified that Celeste’s inherited interest and the interest purchased during the marriage were titled in Celeste’s name alone. However, in 2007, the Marters executed a deed conveying the 120 acres to themselves as “joint tenants with full rights of survivorship and not as tenants in common.” The chancery court determined that the 60 acres Celeste inherited was her separate property. The court found that the remaining 60 acres was marital property subject to equitable distribution.[1]
¶ 6. Gary testified that there was a metal workshop located on the property. Gary valued the workshop at $16,050. The chancery court did not explicitly address the workshop in the divorce decree. However, in response to Celeste’s and Gary’s motions to reconsider, the chancery court found that the workshop constituted a fixture that passed with the property to Celeste.
¶ 7. Celeste and Gary also acquired several automobiles during the marriage. The chancery court awarded Celeste her personal vehicle, a 2007 Infiniti G35, and awarded Gary a 2006 Ford F-150, a 2005 Nissan Murano, and a 1997 Ford F-150. Gary testified that after he and Celeste separated, he withdrew money from the couple’s joint bank account to purchase the “2005 Infinity [sic].” Based on Gary’s testimony, the chancery court deducted the value of the Infiniti, $19,675, from the total cash assets subject to equitable distribution.
¶ 8. Both Gary and Celeste asked the chancery court to reconsider its calculation of the cash assets subject to equitable distribution.[2] However, in its initial order *737 regarding the motions to reconsider, the chancery court failed to address the issue. Sometime later, the parties determined that Gary was actually referring to his 2005 Murano, not Celeste’s 2007 Infiniti, in his testimony. Gary had withdrawn cash from the couple’s joint bank account to purchase the Murano, valued at $13,850.
¶ 9. Consequently, Celeste filed a motion to correct the judgment, arguing for the first time that the court had incorrectly deducted the value of the Infiniti instead of the Murano. The chancery court then entered an amended order on the motions to reconsider and ordered Gary to pay Celeste $9,837.50, or half of the value of the Infiniti.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Classification of Property

¶ 11. Gary argues that the chancery court erred in classifying Celeste’s 60 acres of inherited property as her separate property. Gary contends that the 60 acres converted to marital property by virtue of commingling.
¶ 12. For purposes of a divorce proceeding, marital property consists of “any and all property acquired or accumulated during the marriage.” Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). Marital assets “are subject to an equitable distribution by the chancellor.” Id. However, “those assets attributable to a party’s separate estate prior to marriage are considered non-marital property [and are] not subject to equitable distribution.” Ory v. Ory, 936 So.2d 405, 411(¶ 13) (Miss.Ct.App. 2006) (citing Hankins v. Hankins, 866 So.2d 508, 511 (¶ 13) (Miss.Ct.App.2004)). “While this is the general rule, non-marital assets may lose their status as such if the party commingles the asset with marital property or uses [it] for familial benefit.” Id. (citing Johnson v. Johnson, 650 So.2d 1281,1286 (Miss.1994)).
¶ 13. It is undisputed that Gary maintained the property and paid the property taxes out of the couple’s joint checking account. At some point during the marriage, the Marters planted 49 acres of pine trees and 32 acres of hardwood trees on the property. The Marters enrolled in a Conservation Resource Program (CRP) with the federal government whereby they receive rental payments for the trees. However, the rental payments have always been directly deposited into Celeste’s separate checking account.
¶ 14. In support of his argument that the 60 acres Celeste inherited converted to marital property by virtue of commingling, Gary points to his maintenance of the property, the fact that the property is titled jointly, and the fact that he paid the property taxes from the couple’s joint checking account. As to Gary’s maintenance of the property, Celeste testified that Gary maintained the property, including occasional bush hogging. Additionally, Gary testified that he planted some trees on the property, although he acknowledged that Celeste’s brother planted the majority of the trees. Finally, Gary acknowledged that the rental payments for the trees were directly deposited into Celeste’s separate bank account. In a case with similar facts, our supreme court held *738 that the husband’s act of planting trees on his wife’s inherited property did not convert the property to marital by virtue of commingling. Hankins v. Hankins, 729 So.2d 1283, 1286-87 (¶¶ 14-15) (Miss.1999); see also Ory, 936 So.2d at 411 (¶ 15) (rejecting husband’s argument that wife’s separate property converted to marital because he “cleared a portion of the land, hauled dirt onto the property, and had a large number of seedlings planted on the property”). We see no reason to hold differently here where Gary acknowledged that Celeste’s brother planted the majority of the trees, the rental payments for the trees were deposited into Celeste’s separate bank account, and Gary’s maintenance efforts on the property were de minimis.
¶ 15. Gary also contends that because the property is jointly titled, it converted from Celeste’s separate property to marital. However, our supreme court has rejected the “title theory” and has stated that “[t]he issue in divorce is which property is ‘marital property,’ subject to equitable distribution, and that determination proceeds absent any presumption based on title.” Pearson v. Pearson, 761 So.2d 157, 163 (¶ 16) (Miss.2000). Consequently, we are not persuaded that Celeste’s separate property converted to marital by virtue of joint titling.
¶ 16. Additionally, Gary argues that Celeste’s separate property converted to marital because he paid taxes on the property from the couple’s joint checking account. However, this Court has previously held that property-tax payments are traceable and do not transmute separate property into marital. Brock v. Brock, 906 So.2d 879, 888 (¶ 50) (Miss.Ct.App.2005). Based on the above, the chancery court did not err in classifying Celeste’s 60 acres of inherited property as separate. This issue is without merit.

2. Valuation of Property

¶ 17. Gary argues that the chancery court erred in its valuation of the 120 acres. Gary also contends that the chancery court erred in failing to assign a value to his workshop.
¶ 18. Gary’s original Uniform Chancery Court Rule 8.05 financial statement valued the 120 acres at $55,000. Gary did not assign a value to the pine trees and hardwood, but he did include a disclaimer that his assigned value of $55,000 excluded the value of “28 forest acres.” Celeste testified that she agreed with Gary’s valuation.[3] In 2010, Gary had the 120 acres appraised, and he amended his 8.05 financial statement to reflect the appraised value of the property. In his amended 8.05 financial statement, Gary valued the 120 acres, exclusive of the trees, at $215,000. Additionally, he valued 49 acres of pine trees at $61,904 and 32 acres of hardwood at $30,924.96.
¶ 19. The chancery court valued the 120 acres at $110,000. Presumably, the chancery court intended this amount to account for the “forest acres” as well because it did not value them separately. However, there is no explanation in the chancery court’s order as to how the court arrived at its valuation for the 120 acres.
¶ 20. This Court has previously stated that “[i]t is the chancellor’s responsibility in a divorce proceeding to make an adequate investigation into the value of the marital property that is subject to division[.]” Jenkins v. Jenkins, 67 So.3d 5,13 (¶ 19) (Miss.Ct.App.2011). “Property divi *739 sion should be based upon a determination of [the] fair market value of the assets, and these valuations should be the initial step before determining division.” Id. (quoting King v. King, 946 So.2d 395, 403 (¶ 20) (Miss.Ct.App.2006)). Expert testimony regarding valuation is not required in every case, and a chancery court’s findings on valuation “may be accomplished by adopting the values cited in the parties’ 8.05 financial disclosures, in the testimony, or in other evidence.” Id. (quoting Horn v. Horn, 909 So.2d 1151,1165 (¶49) (Miss.Ct. App.2005)). However, there must be “some evidentiary support in the record” for the chancery court’s valuation judgments. Id. at 13 (¶ 20) (quoting Dunaway v. Dunaway, 749 So.2d 1112, 1121 (¶28) (Miss.Ct.App.1999)). Based on our careful review of the record, there is no evidence supporting the chancery court’s valuation of the 120 acres at $110,000.
¶ 21. Gary also argues that the chancery court erred in finding that his workshop constituted a fixture that passed with the 120 acres awarded to Celeste. Gary valued the workshop at $16,050 on his amended 8.05 financial statement.[4] The chancery court did not account for the workshop or its value in the divorce decree. In her motion to reconsider, Celeste asked the court to address the ownership of the workshop, given that Gary had allegedly expressed an intent to remove it from the property. In its order regarding the motions to reconsider, the chancery court found that the workshop passed with the property awarded to Celeste, but the court did not assign any value to it. Therefore, we can only assume that the chancery court intended the $110,000 value assigned to the 120 acres to also encompass the value of the workshop. However, as stated previously, the chancery court provided no explanation as to how it arrived at the $110,000 value.
¶ 22. Accordingly, we reverse the chancery court’s judgment and remand this case for a valuation of the 120 acres that accounts for both the value of the trees and the workshop.

3. Motion to Correct Judgment

¶ 23. Gary argues that the chancery court failed to comply with Rule 60 in amending its order regarding the motions to reconsider. Specifically, Gary asserts that because the trial record had been transmitted to the supreme court, the chancery court was required to seek leave from the appellate court before entering its amended order. Because it failed to do so, Gary contends that the chancery court was without jurisdiction to amend its order. While we agree that the chancery court was without jurisdiction to amend its order, we do not agree with Gary’s reasoning.
¶ 24. In Celeste’s motion to correct, she sought to alter the chancery court’s judgment to properly reflect a deduction for Gary’s purchase of his Murano using the couple’s cash assets. We note that Celeste did not indicate in her motion what rule of civil procedure she was proceeding under. Our supreme court has previously stated that “it is ‘reasonable to consider a party’s motion for reconsideration as one under Rule 60(b)’ when the motion does not state that it was brought under Rule 59 [of the Mississippi Rules of Civil Procedure] and was filed more than ten days after the entry of [a] final judgment in the case.” Carlisle v. Allen, 40 So.3d 1252, 1260 (¶33) (Miss.2010) (quoting Cannon v. Cannon, 571 So.2d 976, 978 (Miss.1990)). Accordingly, “[h]ow a court treats a motion for reconsideration turns *740 on the time at which the motion is served.” Id. (quoting Cannon, 571 So.2d at 978 n. 2). “If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e). If it is after that time, it falls under Rule 60(b).” Id. (quoting Cannon, 571 So.2d at 978 n. 2). Because Celeste’s motion to correct was filed more than ten days after the court entered its amended order regarding the motions to reconsider, it should be treated as a Rule 60 motion.
¶25. Gary’s argument regarding the jurisdictional limitations of Rule 60 ignores Rule 4(d) of the Mississippi Rules of Appellate Procedure. Under Rule 4(d), a timely notice of appeal is suspended pending the disposition of certain post-trial motions. See M.R.A.P. 4 cmt. Rule 4(d) provides in pertinent part:
If any party files a timely motion of a type specified immediately below[,] the time for appeal for all parties runs from the entry of the order disposing of the last such motion outstanding. This provision applies to a timely motion under the Mississippi Rules of Civil Procedure (1) for [a] judgment under Rule 50(b); (2) under Rule 52(b) to amend or make additional findings of facts, whether or not granting the motion would alter the judgment; (3) under Rule 59 to alter or amend the judgment; (4) under Rule 59 for a new trial; or (5) for relief under Rule 60 if the motion is filed no later than 10 days after the entry of [the ] judgment. A notice of appeal filed after announcement or entry of the judgment but before disposition of any of the above motions is ineffective to appeal from the judgment or order, or part thereof, specified in the notice of appeal, until the entry of the order disposing of the last such motion outstanding.
(Emphasis added). Consequently, under Rule 4(d), a trial court retains jurisdiction to grant a Rule 60 motion provided the motion is filed within ten days after the entry of the judgment, even though a notice of appeal has been filed. However, Celeste filed her Rule 60 motion nearly two months after the chancery court entered its order regarding the motions to reconsider; therefore, Rule 4(d) does not apply, and the chancery court lacked jurisdiction to grant the motion following Gary’s notice of appeal. As such, we vacate the chancery court’s amended order on the motions to reconsider.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF GRENADA COUNTY IS AFFIRMED IN PART; REVERSED AND REMANDED IN PART; AND VACATED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
LEE, C.J, GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. The court awarded Celeste the remaining 60 acres of property in its equitable division of the assets. Therefore, Celeste received the entire 120 acres, 60 as a result of equitable distribution and 60 as a result of the court's finding that they were her separate property.

. In his motion to reconsider, Gary argued that the chancery court erred in reducing the couple’s cash assets by the current value of Celeste’s Infiniti ($19,675) rather than the price paid for the Infiniti in cash ($38,000). In her motion, Celeste argued that the chan- *737 eery court erred in deducting the value of the Infiniti because the Marters had purchased the car prior to their separation. Consequently, Celeste asked the court to return $19,675 to the marital cash assets and reconsider its equitable distribution of the marital assets.

. Celeste’s 8.05 financial statement valued the 120 acres at $50,000 and did not include a valuation for the trees.

. Gary did not value the workshop in his original 8.05 financial statement.