LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. Teresa and William Gardner married in 1987 and separated on December 15, 2007. Teresa filed for divorce on March 24, 2010, in the Hinds County-Chancery Court, alleging habitual cruel and inhuman treatment, desertion, and irreconcilable differences. William filed a counterclaim seeking a divorce on the ground of habitual cruel and inhuman treatment. All grounds were subsequently dropped except the ground for desertion. After a trial, the chancellor granted Teresa a divorce on the ground of desertion. The chancellor divided the marital estate and ordered William to pay Teresa a total of $27,055.50. The chancellor denied both parties’ requests for attorney’s fees.
¶2. William appeals, asserting the following issues: (1) the chancellor erred in granting Teresa a divorce on the ground of desertion; (2) evidence was improperly admitted; (3) the chancellor erred in distributing marital assets; and (4) he was denied his right to a fair trial.
¶ 3. Teresa cross-appeals, asserting the chancellor erred: (1) in distributing the marital assets; (2) in the valuation of certain property; (3) in dividing the marital debt; and (4) by failing to award her attorney’s fees.
STANDARD OF REVIEW
¶ 4. We afford chancellors much discretion in our review of domestic-relations cases. Steiner v. Steiner, 788 So.2d 771, 777 (¶ 18) (Miss.2001). This Court will not disturb a chancellor’s findings unless they are manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. Mizell v. Mizell, 708 So.2d 55, 59 (¶ 13) (Miss.1998).
DISCUSSION
I. DESERTION
¶ 5. In his first issue on appeal, William contends the chancellor erred in granting a divorce on the ground of desertion. Mississippi Code Annotated section 93-5-1 (Supp.2012) allows for a divorce on the ground of “[w]illful, continued and obstinate desertion for the space of one (1) year.” William cites the following in support of his argument: Teresa opened her own checking account; Teresa testified she tried to reconcile; Teresa sold his tools and equipment; he picked his mail up at the marital home twice a month; he contributed money towards the couple’s joint debts; and they filed a joint tax return for 2007.
¶ 6. The chancellor determined that William offered no testimony to contradict Teresa’s assertion that William left the marital home on December 15, 2007, and failed to return or resume any marital duties. William also offered no proof that his failure to return to the home was Teresa’s fault. The chancellor found William’s contribution to the marital debt, including the house payment, “might well be otherwise expected in [William’s] own financial self-interest in order to preserve such assets.” Teresa testified she spoke on the phone frequently with William in an effort to persuade him to return to the marriage. Teresa also testified that William never entered the house to pick up his mail; rather, she left it outside for him. We find there was no error on the part of the chancellor in granting Teresa a divorce on the ground of desertion. This issue is without merit.
*1165 II.IMPROPER EVIDENCE
¶ 7. In his second issue on appeal, William contends certain evidence was improperly admitted in violation of Mississippi Rule of Evidence 1006. Rule 1006 states as follows:
The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.
¶ 8. William argues he requested all bank records and statements from Teresa during discovery, but Teresa failed to produce these until trial when she attempted to admit the summaries of these documents into evidence. From the record, it appears the bank records at issue are statements from William’s personal checking account. William’s attorney admittedly received notice from Teresa’s attorney that these records were available for his review as early'as November 29, 2010. It appears that Teresa actually requested these documents in discovery, not William, and Teresa was required to obtain the records via subpoena on the bank. In his testimony, William admitted that he and his attorney reviewed the bank statements on December 3, 2010, at Teresa’s attorney’s office. Furthermore, the comment to Rule 1006 states that “the summaries are clearly admissible as evidence, but ... the underlying material [should] be made available to the other parties for their examination.”
¶ 9. The decision to admit evidence is within the chancellor’s discretion. Sproles v. Sproles, 782 So.2d 742, 749 (¶ 29) (Miss.2001). We cannot find any abuse of discretion by the chancellor in allowing the summary of William’s bank records into evidence. This issue is without merit.
III. EQUITABLE DISTRIBUTION
¶ 10. In his next issue, William contends the chancellor failed to give him credit for the monthly deposits in the parties’ joint checking account between 2008 and 2010. However, William has failed to cite any authority or advance any substantive argument to support this claim. It is well settled that “this Court is not required to address any issue that is not supported by reasons and authority.” Varvaris v. Perreault, 813 So.2d 750, 753 (¶ 6) (Miss.Ct.App.2001) (citations omitted). Thus, we decline to review this issue.
IV. RIGHT TO A FAIR TRIAL
¶ 11. In his final issue on appeal, William argues he was denied a fair trial and a trial free from ambush. William simply reargues his earlier issue regarding the summary of William’s bank statements. Having found that issue to be without merit, we likewise find this issue to be the same.

Cross-Appeal

I. EQUITABLE DISTRIBUTION '
¶ 12. In her first issue on her cross-appeal, Teresa contends the chancellor’s factual findings regarding a bank account opened by William in 2003 were in error. Teresa argues this error resulted in an inequitable distribution of the marital assets.
1113. The chancellor found that “the parties opened two checking accounts in about 2003, a joint account on which both parties had authority to withdraw funds and another that was a business account for [William’s] private investigation work.” *1166 Teresa claims the chancellor correctly found William had dissipated marital assets, but incorrectly calculated the amount dissipated based upon an erroneous finding that the checking account opened by William in 2003 was a joint account.
¶ 14. The testimony is confusing in regard to the multiple bank accounts, but William testified he opened two accounts in 2008, one was the account he used to deposit work checks and the other was described by William as a joint account. Although William described the account used for his work checks as a personal account and not a business account, William testified he did deposit checks he received pursuant to his employment as a private investigator for a local law firm into this account. William further stated that at the time of trial, this account had no money in it. Although William’s testimony in regard to these bank accounts was confusing, he did testify at one point that Teresa had signing authority on a joint account opened in 2003.
¶ 15. The chancellor further found as follows: “The evidence in the form of account documentation and the testimony of the parties does not completely clarify the uses made of the funds in these accounts, although both parties acknowledge that many of their marital expenses, both during the period they continued to live together and after the separation, were paid from funds in these accounts.” Teresa admitted some of the money from these accounts, including William’s personal account, was used for furniture, vacations, home remodeling, gym memberships, dog food, and landscaping their home.
¶ 16. Regardless, the chancellor made in-depth findings in determining the marital assets and equitably dividing the same, including a detailed analysis of the factors outlined in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). We find no error by the chancellor. This issue is without merit.
II. VALUATION OF WILLIAM’S TOOLS
¶ 17. In her next issue on cross-appeal, Teresa argues the chancellor erred in finding Teresa wrongfully sold some of William’s motorcycle tools. Teresa also contends the chancellor placed an incorrect value on these tools.
¶ 18. These tools consisted of a welding machine, a lift table, an air compressor, and jacks. In his financial statement, William estimated these tools were worth approximately $8,000. William also testified to this at trial. Teresa admittedly sold some of these tools for $800 and gave the others away. This occurred after William had left the marital home.
 ¶ 19. “[Findings on valuation do not require expert testimony and may be accomplished by adopting the values cited in the parties’ [Uniform Chancery Court Rule] 8.05 financial disclosures, in the testimony, or in other evidence.” Horn v. Horn, 909 So.2d 1151, 1165 (¶ 49) (Miss.Ct.App.2005) (citations omitted). The chancellor did the best he could with the evidence presented to him, and we decline to find error in his conclusions. This issue is without merit.
III. DIVISION OF MARITAL DEBT
¶ 20. In her next issue on cross-appeal, Teresa contends the chancellor erred in dividing the marital debt. However, Teresa’s argument is simply a restatement of her first issue — that the chancellor’s findings in regard to William’s checking accounts were error and these errors resulted in the disproportionate allocation of marital assets and marital debt. Having found no abuse of discretion by the chan *1167 cellor in regard to Teresa’s first issue on cross-appeal, we find no merit to this issue.
IV. ATTORNEY’S FEES
¶ 21. In her final issue on cross-appeal, Teresa argues the chancellor should have awarded her attorney’s fees. Chancellors are to apply the factors set forth in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), in granting or denying attorney’s fees. An award of attorney’s fees is a matter largely within the sound discretion of the chancellor. Smith v. Smith, 614 So.2d 394, 398 (Miss.1993). This Court is “reluctant to disturb a chancellor’s discretionary determination [of] whether or not to award attorney’s fees.... Id. (citation omitted).
¶ 22. The chancellor ordered each party to be responsible for “their respective legal fees and other costs in this proceeding.” Although the chancellor made no specific findings under the McKee factors, there was sufficient evidence for the chancellor to consider in deciding whether to award Teresa attorney’s fees; thus, we affirm. See R.K. v. J.K., 946 So.2d 764, 779 (¶ 46) (Miss.2007) (“[A]bsent an apparent abuse of discretion, this Court will assume the chancellor considered the appropriate factors in awarding [or denying] attorney’s fees.”); Dickerson v. Dickerson, 34 So.3d 637, 649 (¶ 49) (Miss.Ct.App.2010) (“[W]here there is substantial evidence in the record supporting the chancellor’s award of attorneys’ fees, the omission of specific findings cannot be deemed reversible error.”).
¶ 23. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT APPEAL AND ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT/CROSS-APPELLEE AND ONE-HALF TO THE APPELLEE/CROSS-APPELLANT.
IRVING AND GRIFFIS, P.JJ., ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. ISHEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.