# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01393-COA

**GARY C. MARTER**                                                                                            **APPELLANT**

**v.**

**CELESTE G. MARTER**                                                                                          **APPELLEE**


DATE OF JUDGMENT:                 06/13/2013
TRIAL JUDGE:                      HON. PERCY L. LYNCHARD JR.
COURT FROM WHICH APPEALED:        GRENADA COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:          HELEN BAGWELL KELLY
                                  LORI MICHELLE SOLINGER
ATTORNEYS FOR APPELLEE:           JAMES H. POWELL III
                                  MARK KEVIN HORAN
NATURE OF THE CASE:               CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:          VALUED 120 ACRES AT $110,000
DISPOSITION:                      AFFIRMED: 05/12/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**FAIR, J., FOR THE COURT:**

¶1.     This is the second appeal arising from the Grenada County Chancery Court's valuation of 120 acres of land in a divorce proceeding. We conclude that the chancellor did the best he could with the evidence presented to him and that the value assigned to the property fits squarely within the range of estimates available. We affirm.

## FACTS

¶2.     Gary and Celeste Marter were granted an irreconcilable-differences divorce in 2010. They could not agree on a division of the marital estate, so they submitted that issue to the

chancery court for resolution. Unhappy with the result, Gary appealed.

¶3.    This Court, in *Marter v. Marter*, 95 So. 3d 733 (Miss. Ct. App. 2012), largely affirmed the chancellor's decision, but we remanded the case for a valuation of 120 acres of land owned by Gary and Celeste. The chancellor had assigned a value of $110,000 to the 120 acres, but this Court was concerned because the chancellor did not explain how he had arrived at that value. It was unclear whether that value was intended to include the value of trees and a workshop located on the property. *Id*. at 738 (¶19).

¶4.    In *Marter I*, we explained the history of the 120 acres as follows:

> Gary and Celeste owned 120 acres of land in Grenada, Mississippi. Celeste had inherited an undivided one-half interest in the 120 acres from her grandfather sometime between the late 1980s and early 1990s. Celeste's sister held the remaining one-half interest. During the marriage, [in 1998,] the Marters purchased the sister's one-half interest using marital funds. Gary testified that Celeste's inherited interest and the interest purchased during the marriage were titled in Celeste's name alone. However, in 2007, the Marters executed a deed conveying the 120 acres to themselves as "joint tenants with full rights of survivorship and not as tenants in common." The chancery court determined that the 60 acres Celeste inherited was her separate property. The court found that the remaining 60 acres was marital property subject to equitable distribution.

*Id.* at 736 (¶5).[1]

¶5.    On remand, the chancellor conducted a hearing to more thoroughly explore the value

---

[1] This may be an oversimplification. At times, the parties have said that Celeste and her sister inherited 50 acres each, and that they had purchased the other 20 acres from relatives. It is unclear exactly what happened, but the questions of what portion of the property was marital and what was separate were finally decided in *Marter I*, and they are not at issue in this appeal.

of the 120 acres. It was conceded that the workshop was a fixture on the property and that it did not have a value separate from the land. After considering all of the evidence presented at the hearing, the chancellor assigned the same value of $110,000 to the 120 acres. Gary appeals and again asserts that the chancellor's valuation is not supported by the evidence.

## DISCUSSION

¶6. "Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong [or] clearly erroneous, or if the chancellor applied an erroneous legal standard." *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1994) (citation omitted).

¶7. "[P]roperty division should be based upon a determination of [the] fair market value of the assets . . . ." *Cuccia v. Cuccia*, 90 So. 3d 1228, 1234 (¶13) (Miss. 2012) (quoting *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994)). While expert testimony regarding valuation may be helpful, it is not required, and a chancery court's findings on valuation "may be accomplished by adopting the values cited in the parties' Uniform Chancery Court Rule 8.05 financial disclosures, in the testimony, or in other evidence." *Gardner v. Gardner*, 130 So. 3d 1162, 1166 (¶19) (Miss. Ct. App. 2013).

¶8. At the second hearing, the chancellor heard testimony from Gary, two appraisers hired by Gary, and Celeste. On the first day of the first trial, Gary had testified that the marital interest in the 120 acres was worth $55,000, plus an unstated value for lumber on "28 forest acres." On the next day of trial (weeks later), Gary changed his tune. He then claimed the

3

entire 120 acres was marital property and that it had a value of about $308,000, valuing the land without trees at $215,000, 49 acres of pine trees at approximately $62,000, and 32 acres of hardwood at approximately $31,000. Celeste valued the property at $50,000.

¶9.    When asked if his original value of $55,000 was based on the price paid for Celeste's sister's interest, Gary replied, "sort of." He testified that he and Celeste had paid $42,000 for Celeste's sister's interest. Celeste's Rule 8.05 financial statement valued the 120 acres at $50,000. She testified that this value was based on the price she and Gary paid for her sister's interest, which was approximately $22,000 or $25,000. Several cancelled checks were entered into evidence that added up to a number that supported Celeste's account. Gary could not document the higher purchase price he claimed.

¶10.    Gary's 2010 appraisal, using a market analysis, had valued the land – bare, as if it had been clear cut – at $215,000. But the appraiser testified that in the past 36 months, he had found only one comparable sale in Grenada County, so he was forced to consider properties from other counties. In fact, the property in the same county was the least comparable because it was undergoing construction and was located in an area where the land values were higher. The appraiser testified that land values vary widely around the state, but the properties in other counties he considered were located in similar markets. On cross-examination, the appraiser was presented with current advertisements for the sale of land in Grenada County in the $1,000/acre range. Another appraiser valued the trees – this time, 108 acres worth – at approximately $79,000, but he conducted the appraisal in 2013, several years

4

after the divorce. The timing of the appraisal calls its relevance into question, though the appraiser testified that he believed the value of the timber would have been a little higher at the time of the divorce.

¶11.    The chancellor summarized his findings as follows:

> As argued by [Celeste] in her proposed findings, the expert testimony presented was wrought with questionable data. It used comparable property that was not within the county or even the region (hills vs. delta) of the subject property. The comparable sales were stale in connection with this property at the time of valuation and one of the sales was developmental property[,] not farmland as is the subject property.
>
> That early on during trial of this cause [Gary's] opinion of the subject property was that it was of a value of $110,000.00, as previously determined by this Court.
>
> [Celeste] presented evidence that the original purchase price the parties paid for the property was $450.00 per acre, when they purchased it in 1998. Other testimony reflected properties for sale in Grenada County, where the subject property is located, offered for sale at $1,000.00 per acre.
>
> That the Court takes judicial notice pursuant to Rule 201 of the Mississippi Rules of Evidence that the Grenada County Tax Assessor valued the property and timber thereon at the time of divorce in 2010 to be $48,924.00 and taxed accordingly. Though these valuations may be routinely low, accepting for the sake of argument that the property is worth twice the true value as assessed by Grenada County, the property, in toto[,] would have a value of $97,848.00 as opposed to the original value of $110,000 found by the Court after accepting the testimony of the parties at $55,000.00 for an undivided one[-]half interest in the portion subject to equitable distribution.
>
> Considering all of the evidence and testimony with respect to the valuation of the property, the Court finds the value of the property subject to equitable distribution to have the value of $110,000.00 for the reasons set forth herein.

¶12.    Gary first argues that the chancellor erred in valuing the 120 acres at $110,000

because neither party placed that specific value on the property. But he presents no authority supporting this proposition. Instead, the chancellor is the ultimate finder of fact, and as the finder of fact he is entitled to accept or reject the testimony of witnesses, in whole or in part, and to give the various testimony the weight it deserves; the chancellor's findings can be disturbed only if clearly wrong or derived from the application of an erroneous legal standard. *Mize v. Westbrook Constr. Co. of Oxford LLC*, 146 So. 3d 344, 348 (¶6) (Miss. 2014). Our courts have repeatedly recognized that the chancellor is entitled to make an independent judgment of a property's value, especially where the estimates of the parties vary widely. In *McKnight v. McKnight*, 951 So. 2d 594, 596 (¶¶7, 10) (Miss. Ct. App. 2007), this Court affirmed a valuation where the chancellor had apparently just averaged the two proposed values, because the evidence in the record supported the conclusion that the low estimates were too low and the high estimates were too high. We reached the same result in *Williams v. Williams*, 129 So. 3d 233, 241 (¶32) (Miss. Ct. App. 2013). "If the court finds all of the competing values to be inaccurate, it may make its own independent valuation." Brett R. Turner, 2 *Equitable Distribution of Property* § 7:12 (3d ed. 2005).

¶13. Gary next contends that the chancellor erred in considering the tax assessor's appraisal of the property, which was noted to be approximately $49,000. The chancellor took notice of the tax appraiser's valuation on his own initiative, but without objection from either party. Gary cites to *Watson v. Watson*, 882 So. 2d 95, 106-07 (¶¶55-57) (Miss. 2004), where the supreme court reversed a valuation determined by simply adding 15% to the tax roll

6

assessment. The chancellor derived this formula from his own experience, and he applied it despite all the other evidence in the record supporting a higher value. But, in today's case, the chancellor did not apply a rigid formula; he merely noted that he had found the value of the 120 acres to be significantly in excess of the tax assessment. The chancellor's observation does not demonstrate a defect in his reasoning.

¶14. Finally, Gary argues that the chancellor committed reversible error when he failed to consider the value of the timber separately from the land. In the judgment on remand, the chancellor expressly noted that there was timber on the property, but he treated it as a fixture of the land and did not assign it a separate value. Gary offers no authority requiring land and timber to be valued separately; he only supports this claim by saying that "[Celeste] has never presented any evidence to contradict [his] contention." Gary suggests that the chancellor could not disregard the testimony of Gary's timber appraiser, but that appraisal was done years after the divorce, and there was greatly varying testimony as to the value of the timber. Celeste and the tax assessor valued the land, including the trees, at approximately $50,000. Gary points out that both of these valuations have their flaws, which the chancellor was very much aware of. But Gary himself originally valued the land at $55,000 plus the unspecified value of 28 acres of trees. The timber appraisal he now relies upon was conducted several years after the divorce and valued 108 acres of timber. "Expert opinions are not obligatory or binding on triers of fact but are advisory in nature." *Downs v. Ackerman*, 115 So. 3d 785, 791 (¶18) (Miss. 2013). In situations like this, "where there is reason to doubt the

7

trustworthiness of the appraisal," the "chancellor is justified in rejecting the values an appraiser places." *A & L Inc. v. Grantham*, 747 So. 2d 832, 842 (¶44) (Miss. 1999).

**CONCLUSION**

¶15.    The chancellor has twice found himself in circumstances such as those described by this Court in the oft-cited case of *Dunaway v. Dunaway*, 749 So. 2d 1112, 1121 (¶28) (Miss. Ct. App. 1999), in which this Court said:

> It is our conclusion that the chancellor, faced with proof from both parties that was something less than ideal, made valuation judgments that find some evidentiary support in the record. To the extent that the evidence on which the chancellor based his opinion was less informative than it could have been, we lay that at the feet of the litigants and not the chancellor.

¶16.    We conclude that, as in *Dunaway*, the chancellor did the best he could with the evidence presented to him. *Id.* at 118 (¶14). As this Court will not disturb a chancellor's findings unless manifestly wrong or clearly erroneous, our standard of review requires that the judgment be affirmed. *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1994) (citation omitted).

¶17.    **THE JUDGMENT OF THE GRENADA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.**