# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00090-COA

**JESSE EARL HERRON**                                                  **APPELLANT**

**v.**

**LAWANDA DAPHENE HERRON AND**                           **APPELLEES**
**DOROTHY SHELTON FONDREN**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/23/2020 |
| TRIAL JUDGE: | HON. CATHERINE FARRIS-CARTER |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JAMES H. POWELL III |
| ATTORNEYS FOR APPELLEES: | A. E. (RUSTY) HARLOW, JR. SABRINA D. HOWELL |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 04/26/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., WESTBROOKS AND EMFINGER, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     Jesse Herron (Jesse) and Lawanda Herron (Lawanda) were granted a divorce by the Tallahatchie County Chancery Court.  Jesse appeals, asserting that the trial court erred (1) when it granted a constructive trust in a home on the marital property to Lawanda's mother, Dorothy Shelton Fondren (Dorothy), and (2) when it placed excessive values on marital property prior to division.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Jesse and Lawanda were married in Tallahatchie County on July 2, 1988.  From their union two female children were born.  On April 22, 2019, Lawanda filed for a divorce.  At

the time the parties filed for divorce, only one child, JLH,[1] was a minor. On February 3, 2020, Dorothy moved to intervene in the proceedings, which the trial court granted shortly thereafter. On March 9, 2020, Dorothy subsequently filed her complaint, in which she requested that the trial court grant her a constructive trust in the residence that she built on the fifteen-acre property of Jesse and Lawanda. Both parties had claimed the home as part of their marital estate.

¶3.     On August 26, 2020, the case proceeded to trial. The parties consented to a divorce on the basis of irreconcilable differences. Jesse and Lawanda were also able to agree to joint legal custody of JLH before the proceedings began. The parties voluntarily consented that the trial court should decide the remaining issues of child support, college costs, equitable division of the marital assets and debts, and alimony, as well as retroactive child support and college expenses.

### A.     Trial Testimony

¶4.     Testimony from the parties at trial established that Jesse was a self-employed diesel mechanic with his shop located on the same few acres of the property on which the marital residence was built. Lawanda testified that she was a semi-retired nurse who, due to fibromyalgia, was unable to work full time. Lawanda attested to a gross monthly income of approximately $6,636, with the figure representing a combination of retirement benefits and part-time income. Jesse stated that he earned approximately $1,600 to $3,000 per month. This was contradicted by his report to the Bank of Commerce that he made $8,000 a month,

---

[1] Although JLH attained the age of majority before the filing of this appeal, we maintain the use of initials to protect her privacy.

as well as his 2019 tax report that indicated his income for the year was $111,328. Jesse also denied that his business bank account contained over $15,000 in it during 2019, which was easily proven by bank documents. Additionally, Lawanda and JLH testified that Jesse conducted much of his business in cash, which Jesse acknowledged. Because of these discrepancies, Jesse's actual monthly income was not clearly established.

¶5. These were not the only discrepancies that Jesse was confronted with. Jesse also testified that he had not had adulterous affairs in which he spent money on other women. However, one witness, Angela Harper (Angela) testified that she had an adulterous relationship with Jesse, and he had in fact spent money on her in the form of romantic trips and other gifts. Because Jesse had lied about his finances and affairs, the trial court noted that it found him to be untrustworthy, and therefore placed more credibility on Lawanda's testimony and accompanying property valuations.

### B. Dorothy's House

¶6. Additional testimony described the property Dorothy built on the land of Jesse and Lawanda. Dorothy described herself as a seventy-two-year-old former teacher and testified that she built a home using her savings on a corner of Jesse and Lawanda's property in 2005. Dorothy testified that she built the house at the request of Jesse and Lawanda because they were concerned about her living by herself and arriving home after dark at her old home, which was next to some newly constructed apartments. Dorothy testified that Lawanda and Jesse helped her make the decision to build the house because "they [were] scared for me to be living alone around a lot of youngsters" who resided in the new apartments. She said that

3

Jesse had his brother clear off a spot on their fifteen-acre property for her to build a house. Dorothy further testified that she paid all the expenses related to the house, including the homeowner's insurance and utilities. The only exception was the property taxes for her home, which were included in Jesse and Lawanda's annual tax bill for their entire property. Dorothy eventually remarried and no longer used the house on Jesse and Lawanda's property as her primary residence, although she and her husband left the utilities on for when they would visit. Dorothy gave permission for Lawanda and JLH to reside there after Lawanda's separation from Jesse. Dorothy stated that there was never any need to ask for legal documentation of home ownership prior to the divorce proceedings because "they knew it was my house."

¶7. Lawanda testified that she had always considered the house Dorothy's property, as Dorothy had always been the one to perform the upkeep on it. She explained that the agreement was that Dorothy would will the house to Jesse and Lawanda upon her death, so that they could continue to control who resided in the home. Jesse also testified that he considered the house to belong to Dorothy. He admitted that this only changed when he began to prepare financial documents in preparation for the divorce. Jesse also acknowledged he had never asserted any control over the house, never had a key to the house, and had never spent the night at the house.

   *C.    Court Orders*

¶8. On August 27, 2020, the trial court entered a temporary order requiring Jesse to pay child support in the amount of $850 per month until JLH reached the age of majority. The

4

order also stated that he should reimburse Lawanda a total of $16,501 in monthly increments of $1,200 for past college expenses for JLH in lieu of retroactive child support. The temporary order also required monthly payments for marital debt in the amount of $300 for Lawanda and $400 for Jesse. This order operated until the trial court issued its final order on October 23, 2020.

¶9. In its final order the trial court granted the divorce on the ground of irreconcilable differences. It incorporated the prior determinations from the temporary order regarding child support and college expenses.

¶10. The trial court first gave a detailed analysis of each of the *Armstrong*[2] factors before it denied Jesse's request for alimony from Lawanda. Next, the trial court turned to Dorothy's request for a constructive trust in the home she built on the marital property. The trial court granted her a life estate through the operation of a constructive trust in her home. The trial court determined that "it is clear that all parties in this case actually considered [Dorothy's] legal status as being one of a life estate in the real property," finding that Dorothy was "entitled to the full exclusive use, enjoyment and possession of her home until she dies."

¶11. The trial court then proceeded to the equitable division of the marital assets and debts using the *Ferguson* factors. Real property consisted of the marital home, Dorothy's home, and the fifteen acres on which the homes both sat. While both parties valued Dorothy's home at $130,000, they valued the marital home at very different amounts. Lawanda placed a value of $190,000 on the marital home, while Jesse placed a value of $115,000 on the

---

[2] *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993).

home, based on an appraisal he received five months after Lawanda filed for divorce. The trial court noted that the home sold for more than this appraisal value when they purchased it for $125,000 in 1997. Because of the discrepancy between the values, the trial court took judicial notice of the tax assessor's valuation of $147,594 instead. The trial court awarded Jesse the marital home and his business, as well as two acres associated with the structures, and three additional acres without structures. The trial court granted Lawanda nine acres of the property. Each party received a one-half share of the remaining acre on which Dorothy's house sat.

¶12. Additionally, there were minor disputes in value over personal property, such as a Harley Davidson motorcycle that Jesse valued at $6,000 and Lawanda valued at $8,000. The trial court specifically noted that it found Lawanda's valuations to be more credible in light of Jesse's testimony at trial, which was contradicted by outside witnesses, Lawanda, and his minor daughter.

¶13. The final large discrepancy was regarding Jesse's business assets: his mechanic shop and equipment, tools, and vehicles. Jesse provided the trial court with a valuation of $55,000 for his business structure, which varied wildy from Lawanda's valuation of $400,000 for the business assets. The trial court noted that Jesse did not provide any valuations for his equipment and multiple work vehicles, which uncontradicted testimony established that he owned. These included: two service trucks, two fifth-wheel wreckers, a flatbed truck, a forklift, and additional tools and supplies for his trade. The trial court used Jesse's valuation of his business structure and added an additional $150,000 valuation for the vehicles and

6

tools associated with the business, for a total of $205,000 in business assets for Jesse's business.

¶14. The trial court also divided personal vehicles, checking accounts, retirement accounts, and debts belonging to both parties. The final tally in the trial court's order listed Lawanda as receiving assets valued at $475,702 and debts in the amount of $38,901. Jesse received assets in the amount of $521,969, with marital debts in the amount of $81,310. The final total advantage was to Jesse in the amount of $3,048 according to the trial court.

¶15. Jesse moved to alter or amend the court's final order in November 2020, arguing that (1) the trial court erred in its determination of the amount of child support and college expenses awarded to Lawanda for JLH, (2) his alimony request was incorrectly denied, (3) the tax appraisal was not the proper means of valuing the marital home, (4) the trial court failed to discount the value of Dorothy's home due to the life estate, (5) items of personal property granted to Lawanda were undervalued, while those awarded to him were overvalued, (6) the constructive trust was barred by the statute of limitations, (7) and the trial court erroneously failed to include Lawanda's monthly retirement benefits in the marital assets and debts. The trial court firmly rejected all of Jesse's claims in its final order on the defendant's motion to alter or amend the judgment in December 2020. In January 2021, Jesse filed his notice of appeal on the issues of improper grant of constructive trust and error in the valuation of assets.

**STANDARD OF REVIEW**

¶16. "The scope of review in domestic relations matters is strictly limited." *Dunn v. Dunn*,

7

911 So. 2d 591, 595 (¶8) (Miss. Ct. App. 2005) (citing *Brawdy v. Howell*, 841 So. 2d 1175, 1178 (¶8) (Miss. Ct. App. 2003)). "Particularly in the areas of divorce, alimony and child support, this Court is required to uphold the findings of fact made by a chancellor that are supported by substantial evidence and that do not indicate arbitrariness or caprice." *Id*. (citing *Henley v. Jones*, 880 So. 2d 382, 384 (¶5) (Miss. Ct. App. 2004)). "A chancellor's findings will not be disturbed unless he was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Where there is substantial evidence to support his findings, this Court is without the authority to disturb his conclusions, although it might have found otherwise as an original matter." *Joel v. Joel*, 43 So. 3d 424, 429 (¶14) (Miss. 2010). "Whether a constructive trust exists is a question of law, which this Court reviews de novo." *Barriffe v. Estate of Nelson*, 153 So. 3d 613, 618 (¶26) (Miss. 2014).

## DISCUSSION

### I.    Award of Constructive Trust

¶17.    Jesse first asserts that the trial court improperly awarded a constructive trust to Dorothy, giving her a life estate in the house she built on Jesse and Lawanda's property. We disagree. "A constructive trust is a judicially imposed remedy used to prevent unjust enrichment when one party wrongfully retains title to property." *White v. White*, 325 So. 3d 666, 671-72 (¶20) (Miss. Ct. App. 2019) (quoting *Presbytery of St. Andrew v. First Presbyterian Church PCUSA of Starkville*, 240 So. 3d 399, 405 (¶27) (Miss. 2018)). The Supreme Court has defined a constructive trust as follows:

> A constructive trust is one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission

8

of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*McNeil v. Hester*, 753 So. 2d 1057, 1064 (¶24) (Miss. 2000). "Clear and convincing proof is necessary to establish a constructive trust." *Id*. at (¶25) (citing *Planters Bank & Trust Co. v. Sklar*, 555 So. 2d 1024, 1034 (Miss. 1990)). When "the testimony offered at trial on this issue is not disputed by the parties, the sole question is whether the chancellor erred in not applying a constructive trust to the set of facts at hand. Thus, this issue is a question of law" and is reviewed de novo. *Id.* at 1064 (¶26).

¶18. There are no disputes of fact surrounding the issue of Dorothy's house that was built on Jesse and Lawanda's property. All agree that the property was considered her home until the divorce proceedings began. Instead, Jesse first argues that Dorothy failed to show all of the required elements for a court to grant a constructive trust. Citing *Griffin v. Armana*, 687 So. 2d 1188 (Miss. 1996), Jesse argues that a court of equity may not construct a trust unless there is both a confidential relationship and an abuse of the confidence imposed. *Id*. at 1195. This premise is incorrect. "While a confidential relationship is sometimes required, sometimes it is not." *Joel*, 43 So. 3d at 431 (¶23). In *Joel*, the Supreme Court held that "a constructive trust is a proper remedy in a variety of circumstances," including:

(1) fraud, actual or constructive

(2) duress

(3) abuse of confidence

(4) commission of wrong

9

(5) any form of unconscionable conduct, artifice, concealment, or questionable means

(6) any way against equity and good conscience.

*Id*. at (¶24). "Any of the conduct, by itself, in this disjunctive list will suffice. 'Abuse of confidence' is on the list, but it is only one of many avenues to a constructive trust." *Id*.

¶19.     In *Allgood v. Allgood*, 473 So. 2d 416 (Miss. 1985), a mother appealed a trial court's determination of a constructive trust on the grounds that her son had supplied insufficient evidence to establish a trust relationship between them regarding a piece of land that the mother purchased on her son's behalf. *Id*. at 420-21. The Supreme Court observed that the mother held the record title to the property, "to which she was out of pocket not one penny. [The son] on the other hand had paid the entire purchase price of the property and had nothing." *Id*. at 420. The Supreme Court affirmed the trial court's decision to create a constructive trust even though the son had not fully established a trust relationship between the parties. *Id*. at 421. The Supreme Court found that the trial court correctly applied the clear-and-convincing-evidence burden of proof after listening to the witnesses and found that the mother was holding property that the son had paid for. *Id*. As the Supreme Court reasoned when it affirmed, "it requires little imagination to perceive that upon the facts [that the trial court] found [the mother] unfairly holds title and ought in equity be required to convey it to [the son]." *Id*.

¶20.     In this case clear and convincing evidence supports the same conclusion—that it would be "against equity and good conscience" to award the property to Jesse. *Joel*, 43 So. 3d at 431 (¶24). Given the facts in the record, including Dorothy's building the house with

10

$100,000 from her own savings and Dorothy's payment of all utilities and homeowner's insurance bills, as well as Jesse's admissions that he has never stayed in the house, owned a key to the house, or ever asserted control over it, it seems clear that Jesse and Lawanda "ought in equity be required to convey [the home's title]" to Dorothy in a life estate. *Allgood*, 473 So. 2d at 421. Equally important is Lawanda's testimony that she always considered the house to be her mother's, coupled with Jesse's testimony that he considered the house as Dorothy's until he began to file the financial statements for the divorce. As the trial court said in its final opinion granting a life estate in the home to Dorothy, "[t]he [c]ourt must look beyond just the law to ensure that Jesse and Lawanda are not unjustly enriched before due time from the hard work and sacrifices of [Dorothy]." This Court agrees, and we affirm the trial court's decision to establish a constructive trust and life estate for Dorothy in her home.

¶21. Second, Jesse asserts that the trial court erred when it made no findings as to the clear-and-convincing standard of proof or constructive-trust elements when it established a constructive trust. It is true that the clear-and-convincing standard of proof is required to create a constructive trust. *Shumpert v. Tanner*, 332 So. 2d 411, 412 (Miss. 1976) ("No rule of law is more firmly established in this State than the one which requires that a constructive or resulting trust must be established by clear and convincing evidence."). However, Mississippi Rule of Civil Procedure 52(a) states:

> In all actions tried upon the facts without a jury the court *may*, and *shall upon the request of any party* to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.

M.R.C.P. 52(a) (emphasis added). Specifically, While Rule 52 "gives the court discretion to make such findings absent a party's request, it further provides, as does Uniform Chancery Court Rule 4.01, that a chancellor 'shall' make such findings when required or requested by a party to the suit." *Gulf Coast Research Lab. v. Amaraneni*, 722 So. 2d 530, 535 (¶18) (Miss. 1998) (quoting *Century 21 Deep S. Props Ltd. v. Corson*, 612 So. 2d 359, 366 (Miss. 1992)).

¶22.    This Court can find no such request put forth by Jesse.  Furthermore, upon review it is apparent from the trial court's language indicating that "the record is clear" in reference to testimony supporting her decision that the clear-and-convincing standard was appropriately applied at trial.  Upon de novo review, this Court agrees that clear-and-convincing proof in the form of Jesse and Lawanda's own testimony establishes the house was indeed intended to be owned by Dorothy in a life estate, and that a constructive trust granting a life estate to Dorothy should be applied. Consequently, we find this argument to be without merit.

## II.    Excessive Property Valuations

¶23.    Jesse next asserts that the trial court erred when it placed excessive values on property that was awarded to Jesse in the marital-property division.  Again, we disagree.  Parties may agree to an irreconcilable-differences divorce, while still submitting disputed issues to the chancellor for consideration.  *Burnham v. Burnham*, 185 So. 3d 358, 361 (¶12) (Miss. 2015). "When the parties request that the chancellor resolve the issue of property division, the chancellor must do three things: (1) classify the parties' assets as marital or separate, (2)

value those assets, and (3) divide the marital assets equitably." *Id*. "[E]quitable division of property does not always mean an equal division of property." *Id.* at (¶13). The trial court must use the *Ferguson* factors to ensure that property division is equitable. *Id*. (citing *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994)). The *Ferguson* factors are as follows:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
>
>> a. Direct or indirect economic contribution to the acquisition of the property;
>>
>> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
>>
>> c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
>
> 2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
>
> 3. The market value and the emotional value of the assets subject to distribution.
>
> 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
>
> 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
>
> 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
>
> 7. The needs of the parties for financial security with due regard to the

13

combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.

¶24.    "The equitable distribution of marital assets is within the discretion of the chancery court." *Sproles v. Sproles*, 782 So. 2d 742, 748 (¶22) (Miss. 2001).  At the same time, "it is incumbent upon the parties, and not the chancellor, to prepare evidence touching on matters pertinent to the issues to be tried." *Benton v. Benton*, 239 So. 3d 545, 548 (¶11) (Miss. Ct. App. 2018) (quoting *Dunaway v. Dunaway*, 749 So. 2d 1112, 1118 (¶14) (Miss. Ct. App. 1999)).  "Where a party fails to provide accurate information, or cooperate in the valuation of assets, the chancellor is entitled to proceed on the best information available." *Id.* (quoting *Stribling v. Stribling*, 906 So. 2d 863, 870 (¶25) (Miss. Ct. App. 2005)).

¶25.    Here, the two  disputed valuations of significance were Jesse's and Lawanda's valuations of their marital residence and Jesse's valuation of his mechanic-business assets. There were also some minor variations in valuations of personal property.  First, there was a difference of $75,000 between Jesse's and Lawanda's valuations of the marital home. Lawanda's valuation of $190,000 was based on a home appraisal by Regions bank before a major home remodel in 2018. Jesse's appraisal of $115,000 was provided to him five months after the filing of the divorce.  The trial court noted that this appraisal was less than the purchase price of $125,000 the couple paid for the home in 1997.  Because of the large discrepancy between the valuations, the trial court took judicial notice of the $147,594 valuation placed on the home by the tax assessor, noting that it was a disinterested third

14

party.

¶26. "Our courts have repeatedly recognized that the chancellor is entitled to make an independent judgment of a property's value, especially where the estimates of the parties vary widely." *Marter v. Marter*, 164 So. 3d 511, 514 (¶12) (Miss. Ct. App. 2015). This Court has even "affirmed a valuation where the chancellor had apparently just averaged the two proposed values, because the evidence in the record supported the conclusion that the low estimates were too low and the high estimates were too high." *Id*. at 514-15 (¶12) (citing *McKnight v. McKnight*, 951 So. 2d 594, 596 (¶¶7, 10) (Miss. Ct. App. 2007)). Here, the trial court chose to use its independent judgment to determine that the tax assessor's valuation is the most accurate. Since the trial court may make its own independent valuation when faced with inaccurate competing values, we do not find this assignment of value to be in error. *Id*. at 515 (¶12).

¶27. The second major difference in valuation was for Jesse's mechanic-business assets. While Jesse valued the business structure alone at $55,000, Lawanda valued the business structure, tools, and business vehicles at $400,000. The trial court used Jesse's valuation of the business structure and added an additional valuation of $150,000 for the business vehicles and tools to that total, for an overall valuation of $205,000 for Jesse's business assets. The trial court considered Jesse's tax information for 2018-2019, his 2020 Paycheck Protection Program loan information, testimony regarding a Bank of Commerce loan, and uncontradicted testimony from Lawanda with respect to the tools and vehicles owned by Jesse to determine the value of the business. Jesse provided no evidence to the trial court of

15

the value of his business tools and business vehicles. "Where parties provide inadequate proof of an asset's value, a chancellor's valuation with 'some evidentiary support' will be upheld." *Dunn*, 911 So. 2d at 597 (¶17) (quoting *Dunaway*, 749 So. 2d at 1121 (¶28)). Certainly the record shows that "some evidentiary support" underpins the trial court's valuation of Jesse's business assets. Because of this, we also do not find this valuation to be in error.

¶28. Finally, the trial court admitted that it gave more credibility to Lawanda's valuations of personal property because Jesse "was continually shown during the course of the trial to be an individual with only a fleeting vague association with the truth." "The chancery court sitting as the trier of fact has the primary authority and responsibility to assess the credibility of witnesses." *Sproles*, 782 So. 2d at 746 (¶12). Because of this, and because the trial court based its valuations of personal property upon substantial credible evidence presented to it by Lawanda and her minor child, we do not find any merit in this assignment of error.

## CONCLUSION

¶29. Accordingly, and for the reasons stated above, we affirm the trial court's findings.

¶30. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**