# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01218-SCT

*MATTHEW BURNHAM*

*v.*

*DANA BURNHAM*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT: 06/26/2012
TRIAL JUDGE: HON. DAVID SHOEMAKE
TRIAL COURT ATTORNEYS: JOHN D. SMALLWOOD
THOMAS T. BUCHANAN
DAVID ALAN PUMFORD
COURT FROM WHICH APPEALED: COVINGTON COUNTY CHANCERY
COURT
ATTORNEYS FOR APPELLANT: JOHN D. SMALLWOOD
THOMAS T. BUCHANAN
ATTORNEY FOR APPELLEE: DAVID ALAN PUMFORD
NATURE OF THE CASE: CIVIL - DOMESTIC RELATIONS
DISPOSITION: AFFIRMED IN PART, REVERSED IN PART
AND REMANDED - 11/12/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. One party to this irreconcilable-differences divorce appeals the chancellor's award of child support and equitable distribution of marital property. We find the chancellor's award of child support was supported by the evidence, and we affirm in that respect. But because the chancellor's property distribution rested on several factual findings unsupported by the evidence at trial, we reverse and remand for a new property distribution.

## FACTS AND PROCEDURAL HISTORY

¶2.    After a twelve-year marriage, Matthew and Dana Burnham agreed to a divorce based on irreconcilable differences, that Dana would take primary physical custody of their two minor children—Audrey and Mattilyn—and to a visitation schedule for Matthew. The parties asked the chancellor to determine child support, insurance coverage, distribution of marital property, and whether the parties would share legal custody of the children.

¶3.    After a trial, the chancellor ordered Matthew to pay $600 per month in child support, noting that the amount was based on an agreement of the parties. He also ordered Matthew to pay all property taxes, maintain homeowner's insurance for the marital home, and to provide health, dental, and life insurance for the children.

¶4.    The chancellor awarded Dana use and possession of the marital home valued at $255,000. He ordered that the home be held until the youngest child reached the age of majority, and then sold, with Dana receiving seventy-five percent of the proceeds. He awarded three other pieces of real property—with a combined value of $119,350—to Matthew, to be sold at the same time as the marital home, with Matthew receiving seventy-five percent of the proceeds.

¶5.    Dana also received a 2008 Suburban, valued at $27,000; her Roth IRA, valued at $1,226.87; and half of Matthew's PERS retirement account—$20,582.20, and a Mississippi Deferred Compensation account—$33,329.27—when they became available for distribution. Matthew received his IRA, valued at $730.67; a 2003 F250 truck, valued at $5,000; a 2000 Suburban, valued at $5,000; as well as the remainder of his PERS and

Mississippi Deferred Compensation accounts. He also was ordered to pay all marital debt—a mortgage and home equity line of credit, a farm loan, and a student loan—totaling $225,472.79. So, in total, the chancellor awarded Dana assets worth a total of $303,225.84 and Matthew assets and debts amounting to a net value of negative $7,568.15.

¶6.     Matthew appealed the chancellor's equitable-distribution and child-support awards, and the Mississippi Court of Appeals affirmed on rehearing.[1] Matthew petitioned this Court for writ of certiorari, which we granted, and we now affirm the award of child support, but reverse and remand for a new equitable distribution of marital property.

## STANDARD OF REVIEW

¶7.     In his petition for certiorari, Matthew argues that the Court of Appeals should not have applied a deferential standard of review because the chancellor adopted Dana's proposed findings of fact and conclusions of law. We disagree. In *Bluewater Logistics, LLC v. Williford*, we abandoned the rule that a chancellor's decision to adopt a party's proposed findings of fact was subject to "heightened scrutiny."[2] A chancellor's factual findings, even those adopted from a party, are reviewed for an abuse of discretion.[3]

---

[1] *Burnham v. Burnham*, No. 2012-CA-01218-COA, 2014 WL 9913457 (Miss. Ct. App. June 16, 2015).

[2] *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 156–57 (Miss. 2011) (citing *In re Estate of Grubbs*, 753 So. 2d 1043, 1046–47 (Miss. 2000); *Brooks v. Brooks*, 652 So. 2d 1113, 1118 (Miss. 1995)).

[3] *Bluewater Logistics, LLC*, 55 So. 3d at 157.

## ANALYSIS

### I. Child Support

¶8. Matthew contends that the chancellor erred by ordering him to pay $600 per month in child support because the chancellor erroneously concluded that the parties had agreed to that amount, and because $600 per month exceeds the child support that should have been ordered based on the evidence presented at trial and the statutory guidelines. Because Matthew admitted that the agreement existed in the trial court, we disagree.

¶9. The parties' Consent to Divorce on the Grounds of Irreconcilable Differences reserved child support as an issue to be determined by the chancellor. On the day of trial, Dana's attorney also stated that the parties were asking the chancellor to adjudicate child support. But, in the final order, the chancellor stated:

> Based on the testimony and the evidence as presented at the trial and temporary hearing and the agreement of the parties stated into the record, child support shall be payable to Dana in the amount of $600.00 per month on or before the first of each month.

Matthew now claims that the chancellor erred by relying on an agreement that did not exist.

¶10. The record before this Court does not contain an agreement of the parties as to child support. But, when Matthew filed his Motion for New Trial & Motion to Alter or Amend Judgment in the trial court, he stated:

> The parties entered into a Consent for Divorce on Irreconcilable Differences and the divorce was granted accordingly. The parties also agreed to terms of custody, *child support* and medical insurance and medical bills for the minor children. All agreed to provisions are not at issue here.[4]

---

[4] Emphasis added.

"The well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision."[5] So we will not now find that the chancellor relied on an agreement that did not exist, when Matthew's post-trial motion seeking to amend that order admitted that the parties had agreed on child support and that it was not at issue.

¶11. And because we do not find that the chancellor erred by relying on the parties' child-support agreement, as well as "the testimony and the evidence as presented at the trial and temporary hearing," Matthew's argument that the chancellor impermissibly departed from the statutory guidelines lacks merit. We have recognized that the statutory guidelines are just that, guidelines, and the parties may agree to child support in excess of the statutory guidelines.[6] And so long as the chancellor finds the amount of child support to be adequate and sufficient, we will not reverse solely because the amount exceeds the guidelines.[7]

## II.    Equitable Distribution

¶12. Parties to an irreconcilable-differences divorce may agree to the divorce itself, but submit disputed issues—such as property division—to the chancellor for adjudication.[8]

---

[5] *Mills v. Nichols*, 467 So. 2d 924, 931 (Miss. 1985) (citing *Natural Father v. United Methodist Children's Home*, 418 So. 2d 807 (Miss. 1982); *Mabry v. Winding*, 229 Miss. 88, 90 So. 2d 175 (1956)).

[6] *Short v. Short*, 131 So. 3d 1149, 1152 (Miss. 2014) ("Although, on the surface, it appears the amount of child support is indeed high, Andy freely consented to provide more support for his child than is recommended by the statutory guidelines. . . . Thus, Andy should be required to adhere to the agreement he freely entered into, which was deemed sufficient by the chancellor and was incorporated into the judgment of divorce.").

[7] *Id.* at 1152 (citing *Bell v. Bell*, 572 So. 2d 841, 845 (Miss. 1990)).

[8] Miss. Code Ann. § 93-5-2 (Rev. 2013).

When the parties request that the chancellor resolve the issue of property division, the chancellor must do three things: "(1) classify the parties' assets as marital or separate, (2) value those assets, and (3) divide the marital assets equitably."[9] Here, neither party questions the chancellor's classification or valuation of the property. Rather, Matthew contends that the chancellor distributed that property in an inequitable manner.

¶13. "[A]n equitable division of property does not always mean an equal division of property."[10] Instead, equitable distribution is determined by applying the factors set out by this Court in *Ferguson v. Ferguson*.[11] Those factors are:

1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

   a. Direct or indirect economic contribution to the acquisition of the property;

   b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

   c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

---

[9] *Wheat v. Wheat*, 37 So. 3d 632, 637 (Miss. 2010) (citing *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994)).

[10] *Bresnahan v. Bresnahan*, 818 So. 2d 1113, 1118 (Miss. 2002).

[11] *Ferguson*, 639 So. 2d at 928.

3.    The market value and the emotional value of the assets subject to distribution.

4.    The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5.    Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6.    The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7.    The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8.    Any other factor which in equity should be considered.[12]

Here, the chancellor made detailed findings under each of the *Ferguson* factors, and his findings led him to a significantly disparate property distribution. Dana received assets with a total value of $303,225.84, and none of the marital debt. Matthew received $217,904.64 worth of marital assets but the entire $225,472.79 in marital debt.

¶14.    While a disproportionate distribution is not per se inequitable,[13] several of the chancellor's findings were not supported by the evidence presented at trial. Under the second *Ferguson* factor, the chancellor faulted Matthew for dissipating marital assets and for violating the chancellor's temporary order.

¶15.    Before trial, the chancellor entered a temporary order which stated:

_____

[12] *Id.*

[13] *Carney v. Carney*, 112 So. 3d 435, 438 (Miss. 2013) ("And we iterate that awarding 100 percent equity in a marital asset to one party is not error per se.").

> The Court orders that neither party is to dispose of or encumber any marital assets, with the exception that Matthew may use income generated by the sale of agricultural products to defray the FSA note that is owed and that he is responsible for continuing to pay. An accounting will be given by Matthew of any and all receipts, cash or otherwise, as a result of the farming operation.

At trial, the undisputed evidence showed that Matthew had paid off the entire FSA note by selling all of his agricultural equipment on the advice of his counsel. He also had made extra payments on his student loan with his own income, and with more than three thousand dollars from the sale of hay that was left after the FSA note had been paid in full.

¶16. Despite the fact that Matthew used the proceeds of the sale to pay off marital debt, the chancellor weighed these acts against Matthew in his *Ferguson* analysis, finding that Matthew had violated the temporary order and dissipated marital assets. According to the chancellor's statements during trial, he intended the phrase "sale of agricultural products" to mean the sale of crops generated through farming, such as the hay.

¶17. But that meaning of "agricultural products" is not apparent from the temporary order, and could mean either agricultural equipment such as tractors, or agricultural crops, such as hay. Further, even if the chancellor correctly concluded that Matthew willfully violated the order, the proper punishment for contempt does not include shifting equitable distribution in favor of the other party.

¶18. Also, based on the evidence in the record before us, Matthew's actions cannot be considered dissipating marital assets. While it is true that the items Matthew sold were marital assets, it was undisputed at trial that every penny accrued from those sales was used to pay marital debt. So the sale of farm equipment had a net-neutral effect on the total value

8

of the marital estate by decreasing marital debt by the same amount that it decreased the value of marital assets.

¶19.    The chancellor also found that Matthew has an earning capacity that exceeds his present income as a professor at Jones County Junior College.  He based this finding on the fact that Matthew had operated a small cattle-farming operation.  In the chancellor's opinion, Matthew could re-enter the farming business to obtain additional income.  In fact, throughout his order, the chancellor repeatedly referred to the farm as an additional source of income.

¶20.    But the undisputed evidence at trial showed that the farm operated at a loss every year.  And while the chancellor observed that Matthew possesses four college degrees, no evidence was provided to show that those degrees should provide more gainful employment than he presently possesses as a junior college professor.

¶21.    So, given that the chancellor's equitable distribution of marital property was significantly affected by findings that were unsupported by the evidence at trial, we must reverse and remand for a new equitable distribution.

## CONCLUSION

¶22.    We affirm the chancellor's award of child support, but we reverse the chancellor's distribution of marital property and remand this case for a new equitable distribution. Because the Court of Appeals affirmed the chancellor's property distribution, we affirm its decision in part and reverse it in part.

¶23.    **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

9

**WALLER, C.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.  RANDOLPH, P.J., NOT PARTICIPATING.**