DICKINSON, PRESIDING JUSTICE,
DISSENTING:
¶ 44.1 write separately for two reasons: I disagree with the plurality’s finding that Judge Roberts gave legal advice; and this Court’s definition of “bad faith” in the context of judicial performance complaints requires nothing more than a finding that the judge “should have known” better. This astonishingly weak standard—if applied fairly and equally to all judges and not just to our justice court judges—would result in a finding of judicial misconduct on the part of every county, youth court, circuit, and chancery judge we have reversed for erroneous rulings.[8]
There is no clear and convincing evidence that Judge Roberts gave legal advice.
¶ 45. The plurality finds that Judge Roberts advised Herring to amend her complaint to the jurisdictional limit and to seek an eviction.[9] However, at the hearing before the Commission, Herring. testified that she had told Judge Roberts what Gastineau owed, including late fees, and this added up “to be more than .that check.” She then told Judge Roberts that she had received a second,bad check from Gastineau. According to Herring, Judge Roberts then asked her, “Would you like to make a motion to amend ... to $3,500. That’s all I can do, or would you rather take it to a higher court?”
¶ 46. When asked if Judge Roberts told her to amend the amount in her complaint Herring stated, “He asked me, but he didn’t tell me.” Further, when asked if Judge Roberts instructed her. to amend her complaint Herring said,
No, he just asked me. And I thought that was the same thing as, do you want to amend this up or down? Because the other judge from Montgomery County does the same thing now. And then the judge that has retired did' the same thing then.
Additionally, when Herring was asked if it was her decision to amend the complaint to the jurisdictional limit she said, “I guess so.”
¶ 47. Clearly, Herring presented evidence that she was entitled to more money than was originally pleaded, and Judge Roberts did no more than ask her if she wanted to amend her complaint. As to whether Judge Roberts advised Herring to amend her complaint to seek an eviction, I find that he simply asked her if she wanted t.o make a motion after she presented *952 evidence of damages that exceeded her original demand. Asking a plaintiff if he or she wants to amend a complaint, without more, is not the same as advising him or her to do so. Because I do not find clear and convincing evidence that Judge Roberts was attempting to give legal advice, I dissent from the plurality’s finding on this point.
There is no clear and convincing evidence that Judge Roberts engaged in fraud, corruption, or bad faith.
¶ 48. Rule 2 of the Rules of the Mississippi Commission on Judicial Performance prevents a judge from being sanctioned “for making findings of fact, reaching a legal conclusion, or applying the law as he understands it” “[i]n the absence of fraud, corrupt motive or bad faith.” This rule, if properly applied, recognizes the reality that all judges make mistakes. Indeed, if trial judges did not make errors of law or fact, we would not need appellate courts. Judicial misconduct should be found only upon clear and convincing proof of a corrupt motive or some other appropriate grounds for a finding of bad faith.
¶ 49. But this Court has stated that “ ‘[a] specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercises of his authority constitutes bad faith.” ’[10] Assuming we expect judges, for instance, to know the rules of evidence, judges commit judicial misconduct every time we reverse their erroneous decisions. This, of course, is absurd.
¶ 50. But out of all the mistakes judges make where they “should have known” their errors, I find it a bit unfair to single out justice court judges—who are not required to be lawyers—and punish them for their mistakes where there is no allegation—let alone evidence—of fraud or corruption. In my view, in the context of judicial misconduct, including what the judge “should have known” in the definition of bad faith defeats the purpose of Rule 2, and leaves the rule open to selective and arbitrary enforcement.
¶ 51. Judge Roberts, I believe, made a mistake in applying the law as he understood it, and the complaint against him should be dismissed pursuant to Rule 2.[11] The appropriate remedy for Judge Roberts’s mistake is reversal by an appellate court, not a public reprimand and hefty fine.
COLEMAN AND BEAM, JJ., JOIN THIS OPINION. MAXWELL, J., JOINS THIS OPINION IN PART.

. E.g., Burnham v. Burnham, 185 So.3d 358 (Miss. 2015) (”[G]iven that the chancellor's equitable distribution of-marital property was significantly affected by findings that were unsupported by the evidence at trial, we must reverse and remand for á new equitable distribution.”).

. Plur. Op. at ¶ 27.

. Miss. Comm’n on Judicial Performance v. Russell, 691 So.2d 929, 936 (Miss. 1997) (quoting Miss. Comm'n on Judicial Performance v. Gunn, 614 So.2d 387, 390 (Miss. 1993)).

. I do not mean to say that a judge’s misapplication of the law could never be judicial misconduct. For instance, in a case where the judge knowingly misapplied the law it would certainly rise to the level of judicial misconduct. But in cases where a mistake was made, Rule 2 should prevent a finding of misconduct.