RANDOLPH, PRESIDING JUSTICE, DISSENTING:
¶ 45. Time-tested maxims of trial practice and appellate review constrain me to depart from opinions of my fellow justices. First, due process requires that courts may not adjudicate rights or liabilities of persons not made parties to a proceeding. See Baker by Williams v. Williams , 503 So.2d 249, 254 (Miss. 1987) ("[A] decree in equity cannot adjudicate the rights or liabilities of persons not parties to the proceeding."). The next fundamental tenet is that appellate review is constrained to the trial court record presented on appeal.[8] See Copeland v. Copeland, 235 So.3d 91 (Miss. 2017) ("This Court may not act upon or consider matters which do not appear in the record and must confine itself to what actually does appear in the record."). Finally, our precedent mandates that a trial court cannot be held in error for an issue not presented to it for determination. See Burnham v. Burnham , 185 So.3d 358, 361 (Miss. 2015) ("The well-recognized rule is *497 that a trial court will not be put in error on appeal for a matter not presented to it for decision.").
¶ 46. The trial-court record reveals that Christina and Kimberly entered a Consent and Stipulation, jointly agreeing on the issues to be presented to and decided by the chancellor. (See Appendix I). Inter alia ,[9] Christina and Kimberly agreed to submit to the trial court the issues of visitation and child support of and for E.J. and Z.S. The issue of custody was raised as to Z.S. only. Christina claimed, and Kimberly testified, that they "shared ... parenting" of both children. The chancellor held, based on the pleadings, exhibits, and testimony, that Christina stood in loco parentis to both children., E.J. and Z.S. See Logan v. Logan , 730 So.2d 1124, 1126 (Miss. 1998) ("[A] person acting in loco parentis [is] one who has assumed the status and obligations of a parent without a formal adoption.")
¶ 47. In this appeal, Christina challenges the chancellor's findings as to Z.S. only, vastly expanding and reframing issues that were never presented to, nor considered by, the trial court. (See Appendix II, comparing the agreed-upon issues before the trial court vis à vis the issues raised in this appeal, verbatim et literatim ). Equitable estoppel was raised for the first time on appeal, and therefore should not be considered by this Court. See Burnham , 185 So.3d at 361.[10]
¶ 48. As to the sperm donor, the chancellor erred in declaring him a natural father whose parental rights had to be terminated. However, I disagree with the plurality's blanket assertion that in any case, no anonymous sperm donors will be accorded the burdens and benefits of natural fathers. Because the record is devoid of an attempt to notice the sperm donor in order to make him a party to these proceedings, the trial court erred in granting the sperm donor such rights. No citation is required for the proposition that in all child-custody, support, and visitation cases, a bonafide effort to give notice of the proceedings is required. Our state and federal constitutions require no less. Further, the parties failed to offer the chancellor documented evidence of a waiver or consent to the proceedings. A diligent review of the record reveals that neither party presented pleadings or affidavits supporting a purported waiver. Our precedent mandates that cases be decided on the facts contained in the record. See In re Adoption of Minor Child , 931 So.2d 566, 579 (Miss. 2006).
¶ 49. The plurality's holding regarding sperm donors begins with suggesting that *498 the "legislative intent"[11] of the disestablishment-of-paternity statute-a statute not at issue in this case-puts the plurality at odds with paragraphs ten through fourteen of the chancellor's final decree. I agree that paragraphs ten through fourteen should be struck from the final decree after remand, but only because they are obiter dictum . The statute referenced in the plurality's opinion never was quoted or argued by either party at the trial level.
¶ 50. Christina sought custody of Z.S. only. The trial court awarded custody of E.J. and Z.S. to Kimberly based on the best interests of the children.[12] Still, the trial court found that Christina, standing in loco parentis to Z.S. and E.J., was entitled to the burdens and benefits of a parent, granting her rights to visitation and ordering child support. This finding is consistent with established legal principles, with or without the sperm donor or a determination of who is Z.S.'s natural father. See Griffith v. Pell , 881 So.2d 184, 186 (Miss. 2004) ("Merely because another man was determined to be the minor child's biological father does not automatically negate the [parent-child] relationship held by [Christina] and the minor [children].") Further, substantial evidence in the record supports the chancellor's finding. Christina argues that the trial court erred in this finding as to Z.S. only, for Christina pleaded that she stood in loco parentis to E.J.
¶ 51. As to Z.S., she argues that married men had their "parental status ... recognized notwithstanding a lack of genetic relationship to their marital children." Christina cites J.P.M. v. T.D.M. , 932 So.2d 760, 762 (Miss. 2006), and Griffith , 881 So.2d at 185. According to this Court:
In both Pell and J.P.M. , a husband learned during the pendency of divorce proceedings that he was not the biological father of a child born of, or just prior to, the marriage. In those cases, we reasoned that the natural-parent presumption had been overcome based on several facts: (1) the husbands stood in loco parentis ....
In re Waites , 152 So.3d 306, 312 (Miss. 2014) (quoting Smith v. Smith , 97 So.3d 43, 47 (Miss. 2012) ). In Pell and J.P.M ., nonbiological fathers were granted in loco parentis status, entitling them to burdens and benefits associated with parenthood, successfully rebutting the natural-parent presumption in a child-custody battle. In Pell , the Court remanded for a best-interest Albright[13] analysis. Significantly, in J.P.M. , the Court affirmed the chancellor's decision to award physical custody to the husband standing in loco parentis , for his decision was based on the best interest of the child-the polestar consideration in all child-custody cases.
¶ 52. In the case sub judice , the chancellor found that it was not in the best interest of either child for Christina to have custody. While the chancellor's custody determination was not manifestly wrong or clearly erroneous, the chancellor erred by failing to address each Albright factor on the record.
¶ 53. Christina's equal-protection argument as it relates to her standing in loco parentis is without merit. In loco parentis is a gender-neutral legal principle. There *499 is no different treatment, analysis, or outcome for men and women who establish in loco parentis status. See , e.g., In re Waites , 152 So.3d at 307 (finding that husband of child's mother acted in loco parentis , even though husband and mother were married during child's birth and raised child together, because he was not biological father of child). Christina's in loco parentis status was a gender-neutral determination.
¶ 54. For the reasons herein stated, I would reverse and remand for the trial court to examine the record and the chancellor's notes and issue a final decree consistent with this dissent.
COLEMAN, MAXWELL AND CHAMBERLIN, JJ., JOIN THIS OPINION IN PART.
APPENDIX I
Issues presented to the trial court verbatim et literatim[14]
ISSUES THAT THE PARTIES WISH FOR THE COURT TO DECIDE
The following issues are therefore, presented to his Court for determination:
A. Custody of the minor child. [Z.S.];
B. Child support for the benefit of [Z.S.];
C. Visitation of the minor child [Z.S.];
D. Whether Christina Strickland shall be placed on the birth certificate of [Z.S.] and named as a parent thereon;
E. Child support for the benefit of [E.J.];
F. Visitation of the minor child [E.J.];
G. Who will claim the children for Federal and State Income tax purposes;
*500 "ISSUES THAT THE PARTIES WISH APPELLANT'S "STATEMENT OF ISSUES" FOR THE COURT TO DECIDE" Presented on appeal verbatim et literatim (See Appellant's Brief 1) A. Custody of the minor child, [Z.S.]; 1. Whether the trial court erred in holding that a child born to a married couple who achieved pregnancy via medically assisted reproductive technology ("A.R.T.") with sperm from an anonymous donor may be denied the benefit and protection of a parental relationship with both spouses. B. Child support for the benefit of [Z.S.]; a. Whether children born to married parents who give birth to a child via A.R.T. with sperm from an anonymous donor are entitled to the marital presumption that both spouses are their legal parents. C. Visitation of the minor child, [Z.S.]; b. Whether the Supreme Court's decision in Obergefell v. Hodges requires Mississippi to apply laws relating to the marital presumption of parentage in a gender-neutral manner so as to apply equally to married same-sex couples. D. Whether Christina Strickland shall be c. Whether the doctrine of equitable estoppel placed on the birth certificate of [Z.S.] and precludes a parent from seeking to disestablish her named as a parent thereon; spouse's parentage of the couple's marital child based solely on the absence of a genetic relationship, when the child was born as a result of anonymous donor insemination, to which both spouses consented. E. Child support for the benefit of [E.J.]; d. Whether the trial court erred in ruling that a man who contributes sperm anonymously for use in A.R.T., whose identity is not and cannot be known, constitutes the legal parent of a child born to a married woman and therefore prevents recognition of the spouse as a parent. F. Visitation of the minor child, [E.J.]; e. Whether the trial court committed reversible error by failing to apply precedent that recognizes the parental rights of a spouse to a child born during the marriage, reared as her own from birth, with an attached parent-child relationship and where no putative father exists or seeks to displace her parental rights. G. Who will claim the children for Federal 2. Whether the trial court erred in failing to recognize and State Income tax purposes; the constitutionally protected liberty interests of Christina and Z.S. in their parent-child relationship that may not be disturbed absent a compelling governmental interest. 3. Whether, consistent with the U.S. Constitution, the marital presumption may denied only to same-sex couples.

Otherwise, parties could "sandbag" trial judges in hopes of prevailing before appellate courts. Such a practice contravenes the fair and efficient administration of justice on appeal. See Order Adopting the Mississippi Rules of Appellate Procedure (Dec. 15, 1994).

Additionally, they asked who would claim E.J. and Z.S. for state and federal income tax purposes, and whether Christina would be placed on the birth certificate of Z.S. and named as a parent thereon. Christina failed to name the State Board of Health as a party in to these proceedings. See Miss. Code Ann. § 41-57-23(1) (Rev. 2013).

Assuming arguendo that this Court is not procedurally barred from considering equitable estoppel, the "facts" relied upon by the plurality were disputed at trial. The chancellor, who heard the testimony and observed the witnesses' demeanor, commented in his bench ruling that "[t]here are two different versions of how the child was cared for and how it came to be that Christina Strickland became a part of his life. Kimberly actually maintains that she was primarily involved in seeking out this procedure [artificial insemination]. Christina claims that she was very much involved with the whole thing. There is a little bit of diametrically opposed testimony as to who was making these decisions." Notwithstanding, the plurality relies on Christina's testimony and opines that "Kimberly is estopped from challenging Christina's parental rights as to Z.S...." (Plurality Op. ¶ 34.)

An inquiry into legislative intent is a hazardous undertaking under even the best of circumstances.

"Court[s] shall in all cases attempt insofar as possible, to keep the children together in a family unit." Bredemeier v. Jackson , 689 So.2d 770, 775 (Miss. 1997).

Albright v. Albright, 437 So.2d 1003 (Miss. 1983).

Substituted initials for full name.