# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CA-00397-COA

**JACKSON McCRORY GAUDIN**                                       **APPELLANT**

**v.**

**CELIA CANTRELL GAUDIN**                                          **APPELLEE**

DATE OF JUDGMENT:             02/28/2025
TRIAL JUDGE:                  HON. E. VINCENT DAVIS
COURT FROM WHICH APPEALED:    ADAMS COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       SCOTT FLETCHER SLOVER
ATTORNEY FOR APPELLEE:        CELIA CANTRELL GAUDIN (PRO SE)
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 06/02/2026
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Jackson and Celia Gaudin consented to an irreconcilable-differences divorce in the Adams County Chancery Court. The parties also consented to allow the chancellor to adjudicate the following unresolved issues pertaining to property division: the division of Jackson's individual retirement account (IRA) and a diamond ring. After a hearing, the chancellor entered a judgment granting the parties an irreconcilable-differences divorce and distributing the contested assets. Jackson filed a post-trial motion to alter or amend the judgment and for a new trial pursuant to Mississippi Rule of Civil Procedure 59, which was denied.

¶2.     Jackson now appeals the judgment and denial of his Rule 59 motion. Finding no error, we affirm the chancellor's judgment.

## FACTS

¶3. Celia and Jackson were married in 1992. In May 2023, after more than thirty years of marriage, Celia filed for divorce. In March 2024, the parties entered into an agreed temporary order that (1) provided for Celia to have exclusive use and possession over the marital home and (2) ordered Jackson to withdraw $1,650 per month from his IRA and pay that amount to Celia, all of which was to continue until further order of the chancellor.

¶4. Although the parties initially filed for divorce on fault-based grounds, they eventually agreed to an irreconcilable-differences divorce and consented to allow the chancellor to adjudicate any unresolved issues pertaining to property division. The parties agreed to the division of their property and debts—including selling the marital home, which was valued at $235,000—with the exception of the division of the IRA in the amount of $60,000 and ownership of a diamond ring valued at $6,000.

¶5. The chancellor held a hearing on the contested issues. Relevant to this appeal, Jackson testified that he received a monthly income of approximately $2,100 in Social Security benefits. Celia testified that she receives a monthly income of approximately $967 in Social Security benefits. The evidence submitted at trial showed that approximately one month after Celia informed Jackson that she wanted a divorce, Jackson withdrew $20,000 from the couple's joint savings account.

¶6. After hearing testimony from the parties and reviewing the evidence, the chancellor entered a judgment of divorce and an order to distribute the two contested assets. Regarding the diamond ring, the chancellor determined that it was the separate property of Celia and not

2

a marital asset.

¶7.     As for the IRA, the chancellor found that it originated from Jackson's thirty-year employment, which lasted from 1974 until 2004. The parties were married for the last twelve of those thirty years. The chancellor calculated that twelve of the thirty years amounted to forty percent, or $24,000, of the IRA balance of $60,000. The chancellor held that this $24,000 would be marital property. The chancellor further determined that the accumulated value of the IRA prior to the parties' marriage, which amounted to $36,000, would be Jackson's separate property.

¶8.     The chancellor noted that pursuant to the agreed temporary order, Jackson had paid Celia $1,650 per month from the IRA. The chancellor found that those payments were in the form of temporary support and did not constitute a loan to be repaid. However, the chancellor held that "those payments made to one party from marital assets which diminished the total marital estate are a factor to be considered in making equitable distribution."

¶9.     The chancellor then applied the *Ferguson* factors[1] and held as follows:

1.      The accumulated value of the IRA is attributable solely to Jackson through his thirty-year employment.

2.      The disposal or prior distribution of a portion of this asset made under the temporary order was for the benefit of Celia. On the other hand, Jackson's withdrawal of $20,000 from the couple's joint savings account prior to the divorce may be considered as a prior distribution as well. . . .

3.      The value of the IRA asset, while not documented, was said by the parties to be $60,000. There would appear to be no sentimental or emotional value attached to the IRA.

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

4. The IRA would ordinarily be subject to distribution.

5. Distribution of the IRA would have no effect on third parties.

6. Proper division of the IRA should serve to lessen future friction between the parties by furthering financial independence.

7. While both parties are retired, the income of Celia appears to be half that of Jackson due to her lower retirement benefits. [Her income is $967 a month; Jackson gets approximately $2,100 from social security.]

8. Summarizing the debt/asset figures from the couple's agreed upon items in the Schedule of Assets . . . shows an overall benefit to Celia over Jackson of $7,175. On the other hand, Celia's contributions to the marriage, being of an intangible nature, weigh in her favor in an equitable distribution of the tangible assets.

After considering the *Ferguson* factors, "including Celia's greater need for financial security in lieu of any other direct payments, as well as consideration of the property settlement agreement reached by the parties[,]" the chancellor divided the $24,000 marital portion of the IRA equally between Celia and Jackson.

¶10. Jackson filed a timely post-trial motion for a new trial or to alter or amend the judgment. M.R.C.P. 59(a), (e). In his motion, Jackson argued that the chancellor's findings of fact should be amended to include the division of the proceeds from the sale of the marital home. Jackson asserted that after factoring in the sale of the marital home, Celia received assets amounting to $151,675, and he only received assets amounting to $96,100. Jackson argued that due to this disparity in assets, he should have received the entirety of the IRA. Jackson also submitted that the chancellor should amend his findings of fact to include that Jackson assumed the marital debt of a Small Business Association (SBA) loan in the amount of $18,400 and that Celia received the diamond ring as separate property "after the parties

4

had previously agreed that [Jackson] was supposed to receive the ring and the [c]ourt allowed her to withdraw" the claim.

¶11. Jackson further argued that in applying the *Ferguson* factors, the chancellor (1) improperly focused on Celia's financial needs as the basis for awarding Celia an overall greater portion of the marital assets, (2) failed to consider Celia's earning capacity, and (3) erred by finding that Jackson's $20,000 withdrawal from the couple's joint savings account dissipated a marital asset.

¶12. The chancellor entered an order denying Jackson's post-trial motion. Regarding the sale of the marital home, the chancellor explained that the house had not been sold at the time of the hearing, and the parties presented no testimony regarding the sale of the home. The chancellor also found that the parties' written property settlement agreement made no provision for equity in the marital home or for the division of sale proceeds. The chancellor stated that he can only consider relevant evidence presented at the hearing.

¶13. As for the diamond ring, the chancellor found that the transcript of the hearing shows that Celia and her attorney stated that they never agreed to the diamond ring being awarded to Jackson. The chancellor addressed Jackson's claim about the SBA loan, stating that he considered the SBA loan debt as Jackson's obligation, but the chancellor also found the SBA loan debt partially offset the $15,250 debt on Celia's van, which left a balance of $3,150 in Jackson's favor. The chancellor also rejected Jackson's claim that he focused on only one *Ferguson* factor, stating that "the [c]ourt enumerated all eight of the *Ferguson* factors and addressed each one separately."

¶14. In addressing Jackson's claim that the chancellor treated his $20,000 withdrawal as dissipating an asset, the chancellor clarified that it did not consider the $20,000 to be a wasteful dissipation of a marital asset; rather, the chancellor considered it to be a prior distribution of a marital asset.

¶15. After the denial of his motion for rehearing, this appeal followed.

## STANDARD OF REVIEW

¶16. This Court applies a limited standard when reviewing a chancellor's determination in domestic-relations matters. *Brodie v. Brodie*, 427 So. 3d 853, 865 (¶29) (Miss. Ct. App. 2025). We "will not disturb a chancellor's judgment when it is supported by substantial credible evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id*. We review questions of law de novo. *Id*.

## DISCUSSION

¶17. On appeal, Jackson argues that the chancellor erred by denying his Rule 59 motion to alter or amend the judgment or for a new trial. Jackson asserts that the chancellor should amend the findings of fact to include "undisputed facts" materially affecting the equitable distribution of marital assets, namely, the "unequal house-sale proceeds," allocation of the SBA debt, disposition of the diamond ring, Celia's exclusive possession of the marital residence, and resulting net asset calculations. Jackson submits that to achieve equity in the division of assets when amending the findings and recalculating the assets, he is entitled to receive the entire IRA balance.

6

¶18. Jackson further argues that the chancellor failed to consider all the *Ferguson* factors in equitably distributing the marital property. Jackson submits that the chancellor improperly based his analysis on a single factor—Celia's need for financial security—and also erred in treating Jackson's withdrawal of $20,000 from the couple's joint savings account as a prior distribution or dissipation.

¶19. We review a chancellor's denial of a Mississippi Rule of Civil Procedure 59 motion for an abuse of discretion. *Gossett v. Gossett*, 313 So. 3d 1063, 1073 (¶33) (Miss. Ct. App. 2021). "A party may only obtain relief on a Rule 59 motion upon showing: (1) 'an intervening change in controlling law,' (2) 'availability of new evidence not previously available,' or (3) the 'need to correct a clear error of law or to prevent manifest injustice.'" *Id*. (quoting *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004)). Rule 59 provides a chancellor with the discretion to grant a new trial or to amend the judgment "if convinced that a mistake of law or fact has been made, or that injustice would attend allowing the judgment to stand." *Gossett*, 313 So. 3d at 1073 (¶33) (quoting *McNeese v. McNeese*, 119 So. 3d 264, 272 (¶20) (Miss. 2013)).

## I. Sale of the Marital Home

¶20. Jackson asserts that the chancellor should amend his findings to include the unequal division of the proceeds that resulted from selling the marital home. Our review of the transcript and the record shows that at the time of the hearing, the marital home had not been sold. The chancellor's order denying Jackson's post-trial motion reflects as much: "There was no testimony presented during the hearing on this allegation and the [c]ourt does not

7

know what the defendant is referring to." Our review of the record further shows that upon filing his post-trial motion, Jackson failed to offer any evidence (other than his own assertion) to the chancery court to show that the home had been sold or the purchase price. In her pro se appellate brief, Celia maintains that the marital home has not been sold.

¶21. Even if Jackson had provided evidence in support of his assertion that the house had been sold after the hearing and the proceeds divided between the parties, this evidence would not be considered "newly discovered evidence" for purposes of a Rule 59(a) motion for a new trial. This Court has explained that "[n]ewly discovered evidence is evidence that existed at the time of trial, but was discovered after trial; it does not include 'evidence that did not exist at the time of trial.'" *Lacoste v. Lacoste*, 197 So. 3d 897, 912 (¶55) (Miss. Ct. App. 2016) (citing *In re V.M.S.*, 938 So. 2d 829, 834 (¶10) (Miss. 2006)). The record shows that at the time of the hearing and the chancellor's judgment, the marital home had not been sold; therefore, evidence of its sale and division of the sale proceeds "did not exist at the time of trial" and cannot qualify as newly discovered evidence. *Id*.

¶22. Finally, as acknowledged by the chancellor in his order denying Jackson's post-trial motion, the parties' written property settlement agreement makes no provision for equity of the marital home or for the division of the sale proceeds upon its sale.

¶23. After our review, we find that the chancellor correctly excluded Jackson's assertions about the sale of the marital home and the division of the sale proceeds from consideration post-trial. We accordingly find that the chancellor did not abuse his discretion in declining to amend his findings of fact and recalculate—and redistribute—the parties' assets based on

Jackson's unsupported assertion.

## II.     Classification of Assets and *Ferguson* Factors

¶24.    Jackson next argues that the chancellor should amend the findings of fact to reflect that the chancellor allowed Celia to withdraw her prior agreement that Jackson was to receive the diamond ring.  Jackson also asserts that the chancellor erred in his consideration and application of the *Ferguson* factors.

¶25.    "When the parties request that the chancellor resolve the issue of property division, the chancellor must do three things: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) divide the marital assets equitably." *Burnham v. Burnham*, 185 So. 3d 358, 361 (¶12) (Miss. 2015) (quotation mark omitted).  When equitably dividing the marital assets, the chancellor should consider the following factors set forth by the supreme court in *Ferguson*, 639 So. 2d at 928.  The *Ferguson* factors include:

(1)     substantial contribution to the accumulation of property;

(2)     degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree, or otherwise;

(3)     the market value and emotional value of assets subject to distribution;

(4)     value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

(5)     tax or other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

(6)     extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of

9

> future friction between the parties;

> (7)     needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and

> (8)     any other factor which in equity should be considered.

*Begnaud v. Begnaud*, 409 So. 3d 604, 612 (¶27) (Miss. Ct. App. 2025) (emphasis omitted). This Court will affirm a chancellor's distribution of marital assets in a divorce if it is supported by substantial credible evidence. *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶26) (Miss. 2009).

¶26.    We first address Jackson's argument that the chancellor should amend the findings of fact to reflect that the chancellor classified the diamond ring as Celia's separate property after the parties had previously agreed that Jackson would receive the ring. The transcript reflects that prior to the hearing, the parties and their attorneys met to complete the necessary documents to proceed with an irreconcilable-differences divorce. Jackson's attorney informed the chancellor that the parties had previously agreed that Jackson would receive the ring. However, Celia's attorney disagreed and claimed that the parties had never discussed the ring. Celia's attorney informed the judge that the two contested issues pertaining to property division were the IRA and the diamond ring. The chancellor then entered an order granting the parties leave to withdraw the fault-based grounds for divorce and allowed them to proceed with an irreconcilable-differences divorce. This order reflects that two contested issues were submitted to the chancellor: the division of the IRA and ownership of the diamond ring. The record reflects that Jackson did not object to allowing the chancellor to determine the ownership of the diamond ring.

10

¶27. The parties then proceeded with the hearing on the contested issues. Regarding the diamond ring, Celia testified that Jackson gave her the ring as a gift. Celia explained that when she and Jackson got married, he promised to give her a diamond ring on their twentieth wedding anniversary, and the diamond ring was the fulfillment of that promise. Celia testified that she intended to pass it down to the parties' adult daughter. Jackson admitted that he had promised to give Celia a ring on their anniversary and that he purchased the ring as a gift for her. However, Jackson testified that he was entitled to receive the ring in the divorce to help offset some of the debt he agreed to assume in the property settlement. In the judgment of divorce, the chancellor found that the diamond ring "was a highly personal gift made without any objectively apparent conditions" and therefore classified it as Celia's separate property.

¶28. In his Rule 59 motion, Jackson did not argue that the chancellor erred in classifying the ring as Celia's separate property; rather, Jackson argued that the chancellor should amend the findings of fact to reflect that the chancellor classified the diamond ring as Celia's separate property *after* allowing Celia to withdraw her prior agreement that Jackson would receive the ring. However, as stated above, the record does not support Jackson's claim that the parties had entered an agreement that Jackson would receive the ring. We therefore find the chancellor did not err in denying Jackson's Rule 59 motion as to this issue.

¶29. Next, Jackson argues that in applying the *Ferguson* factors, the chancellor failed to acknowledge that Jackson assumed the marital debt of the SBA loan in the amount of $18,400 and failed to consider Celia's earning capacity. Jackson claims that the chancellor

11

also erred in treating Jackson's withdrawal of $20,000 from the couple's joint savings account as a prior distribution or dissipation. Jackson further argues that the chancellor failed to consider all the *Ferguson* factors and instead improperly based his analysis on a single factor—Celia's need for financial security. After reviewing the record, we find no merit to Jackson's assertions.

¶30. In his order denying Jackson's Rule 59 motion, the chancellor addressed the issue of the SBA loan debt, explaining that he "considered the $18,400 SBA debt as Jackson's obligation but partially offset it with the $15,250 debt on Celia's van, leaving a balance in Jackson's favor of $3,150." The chancellor's judgment of divorce reflects that in distributing the IRA, the chancellor considered the *Ferguson* factors as well as the parties' property settlement agreement. The property settlement agreement shows that Jackson agreed to assume the SBA loan debt. As for Celia's earning capacity, Jackson specifically claims that the chancellor failed to consider that Celia "is capable of employment, as evidenced by her home-repair work." However, the record contains no evidence that Celia performed any maintenance or home-repair work on the marital home. At trial, Celia testified that she paid the utility bills for the marital home and also paid someone to maintain the yard.

¶31. As for Jackson's withdrawal of $20,000 from the couple's joint savings account, Jackson submits that the chancellor should have analyzed whether the funds were actually wasted or misused. Jackson argues that using marital funds for marital expenses is not dissipation of those assets.

¶32. "While Mississippi has no specific test for discerning the dissipation of marital assets,

12

we find it reasonable when considering if marital assets have been dissipated to look to whether the assets in question were actually wasted or misused." *Reynolds v. Reynolds*, 287 So. 3d 1019, 1025-26 (¶20) (Miss. Ct. App. 2019) (quotation mark omitted). Here, the chancellor clarified in his order denying Jackson's post-trial motion that he "did not characterize the amount withdrawn as a dissipated asset but did take note of its occurrence as a prior distribution of a marital asset. It was not used in the asset/debt calculation." The transcript reflects that Celia acknowledged receiving approximately $4,000 of the $20,000 Jackson withdrew. However, Jackson failed to provide any documentation to the chancellor showing that he used the remaining funds for marital expenses. Regardless, the chancellor clarified that he did not find that Jackson's withdrawal of the $20,000 dissipated a marital asset.

¶33. Finally, our review of the chancellor's judgment of divorce does not support Jackson's claim that the chancellor failed to consider all the *Ferguson* factors. The judgment reflects that the chancellor enumerated and provided findings for all eight of the *Ferguson* factors, as quoted above. *See supra* ¶9. The chancellor also explained that he analyzed the *Ferguson* factors, "including Celia's greater need for financial security in lieu of any other direct payments, as well as consideration of the property settlement agreement reached by the parties." We do not interpret this statement to indicate that the chancellor based his analysis on the single factor of Celia's need for financial security, especially in light of the chancellor's express findings for all the *Ferguson* factors.

¶34. Because the chancellor's findings of fact are supported by substantial credible

evidence in the record, we find no error.

## CONCLUSION

¶35. After our review, we find that the chancellor's findings of fact and application of the *Ferguson* factors are supported by substantial credible evidence in the record; we therefore affirm the chancellor's judgment of divorce. We also find that the chancellor did not abuse his discretion in denying Jackson's Rule 59 motion for a new trial or to alter or amend the judgment, and we affirm the denial of that motion.

¶36. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**